## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

JEREMY BLANCHARD,  
JAKE PRISCAL,  
WILLIAM ANDERSON,  
DAMION PRYOR,  

          Plaintiff,  

          v.  

WILLIAM HYATTE, et al.,  

          Defendants.  

CASE NO. 3:21-CV-160-CCB-SJF  
3:22-CV-165-CCB-SJF  
3:22-CV-286-CCB-SJF  
3:22-CV-582-CCB-SJF  

### OPINION and ORDER

Ripe before the Court is Plaintiffs' Motion for Attorneys' Fees filed in both *Blanchard v. Hyatte*, 3:21-cv-160-CCB-SJF [DE 81] and *Anderson v. Hyatte*, 3:22-cv-286-CCB-SJF [DE 18]. For the reasons discussed below, Plaintiffs' motion will be granted.

### I.    Background

The above-captioned cases are four of thirty-one cases filed by the American Civil Liberties Union ("ACLU") on behalf of individuals currently or previously incarcerated at the Miami Correctional Facility ("Miami") in Bunker Hill, Indiana. In all cases, the inmates allege that they endured unconstitutional conditions while placed in the restrictive housing unit ("RHU") at Miami.

Plaintiff Jeremy Blanchard was the first inmate to file his case, alleging in his March 5, 2021, complaint that he was placed in a RHU cell with near-continuous darkness from September 3, 2020, to October 5, 2020. [*See* DE 1 at 6, ¶44 in 3:21-cv-160-

RLM-MGG]. Over the next eighteen months, the ACLU continued to file cases on behalf of other inmates who had been placed in the RHU at Miami. Accordingly, on November 16, 2021, the Court consolidated the cases for purposes of discovery and all pretrial, nondispositive matters and established a schedule for the parties to conduct discovery and to brief any dispositive motions alleging that the inmate plaintiffs failed to exhaust available grievance remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [*See* DE 40]. The Court's consolidation order further provided that "[d]eadlines for amendments to the pleadings, discovery, and dispositive motions unrelated to exhaustion will be set by separate order." [*Id.* at 4].

Defendants, through counsel from the Office of the Indiana Attorney General ("OAG"), filed dispositive motions contending that the inmate plaintiffs failed to exhaust their available grievance remedies in all the consolidated cases except for the four above-captioned cases. Since exhaustion was not raised in Plaintiff Blanchard's case, he proceeded to propound various discovery requests relating to the merits of his claims, including written discovery requests and a request for a physical inspection of the RHU. Defendants objected to several of Mr. Blanchard's written discovery requests as well as to his request for a physical inspection. As to the written discovery propounded, Defendants contended it was overbroad and impermissibly sought merits discovery relating to the other plaintiffs. As to the request for a physical inspection, Defendants maintained it was low in probative value and overly burdensome.

Unable to resolve this disagreement, Defendants moved for a protective order to limit the scope of written discovery requested by Mr. Blanchard and to forbid a physical inspection at the RHU.

After Defendants' motion was filed in Mr. Blanchard's case, Plaintiffs Jake Priscal, William Anderson, and Damion Pryor filed cases about their placement in the RHU at Miami. Defendants did not file dispositive motions alleging a failure to exhaust administrative grievance remedies in their cases.[1] Like Mr. Blanchard, Plaintiff Priscal proceeded with merits discovery by requesting a physical inspection of the RHU. Defendants objected to Mr. Priscal's inspection request for the same reasons raised in response to Mr. Blanchard's request. Mr. Priscal then filed a Motion to Compel.[2]

The Court denied Defendants' Motion for Protective Order filed in *Blanchard* and likewise granted the Motion to Compel filed in *Priscal* in an opinion and order entered on February 10, 2023. Plaintiffs subsequently moved for an award of the attorney fees they incurred in litigating this discovery dispute and the instant fee motion, to be paid by the OAG. Plaintiffs seek $18,878[3] in fees for their attorneys' 42.45 hours of work on these motions. Plaintiffs' fee request is broken down as follows:

---

[1] Defendants agreed not to file an exhaustion defense in *Blanchard v. Hyatte*, No. 3:21-cv-00160-RLM-MGG, where plaintiff is still incarcerated. Moreover, because the plaintiffs in *Priscal v. Hyatte*, No. 3:22-cv-000165-RLM-MGG, *Anderson v. Hyatte*, No. 3:22-cv-00286-RLM-MGG, and *Pryor v. Hyatte*, 3:22-cv-00582-RLM-MGG, were no longer incarcerated when their actions were filed, the requirement to exhaust administrative remedies no longer applied.

[2] The parties report that the remaining above-captioned Plaintiffs delayed propounding these same discovery requests until after the Court ruled on the pending motions.

[3] Plaintiff's reply brief concedes that one of the billing entries included in counsels' original motion was vague. Accordingly, Plaintiff reduced the requested amount by $480. [*See* DE 90 at 13-14].

- Fees for 9.49 hours of work at a rate of $600/an hour ($5,694) by ACLU of Indiana Legal Director Kenneth Falk; and

- Fees for 32.96 hours of work at a rate of $400/an hour ($13,184.00) by ACLU of Indiana Staff Attorney Stevie Pactor.[4]

Defendants maintain that Plaintiffs are not entitled to award of fees because Defendants' opposition was substantially justified. Defendants also dispute the reasonableness of the fees requested by Plaintiffs' counsel. The Court addresses each argument in turn.

## II.    Discussion

Under Fed. R. Civ. P. 37(a)(5)(A)-(B), "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the [discovery] motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The rule thus memorializes the "great operative principle . . . that the loser pays." *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries . . . ." *Id.*

But the Court must not order payment of expenses if "the opposing party's . . . objection [to discovery] was substantially justified" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). A party's resistance to

---

[4] As discussed below, Plaintiffs' attorneys explain that they do not charge their clients attorney's fees but use these hourly rates in cases involving a fee-shifting statute. [DE 81-1 at 2, ¶11; DE 81-2 at 2, ¶11].

discovery is considered substantially justified if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988) (internal citations and punctuation marks omitted) (brackets in original); *see also Zimmer, Inc. v. Beamalloy Reconstructive Med. Prod., LLC*, No. 116CV00355HABSLC, 2019 WL 2635944, at *1 (N.D. Ind. June 27, 2019) (internal citations omitted). The "unjust" provision of Rule 37(a)(5)(A)(iii) is a "rather flexible catch-all provision." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 959 (N.D. Ill. 2021) (internal citation omitted). Though this provision may overlap with the substantially justified provision, it is a separate inquiry to be considered in addition to the substantial justification inquiry. *Id.* at 960 (internal citations omitted). Whether a party's resistance to discovery was substantially justified, or whether an award of expenses is unjust, is in the court's broad discretion. *Id.* (internal citations omitted).

"The burden of persuasion is on the losing party to avoid assessment of expenses and fees, rather than on the winning party [to] obtain such an award." *Rehder v. KMM Corp.*, No. 122CV00419HABSLC, 2023 WL 5836605, at *2 (N.D. Ind. July 31, 2023) (internal citation omitted). From the start, the Court notes that Defendants make no argument under Rule 37(a)(5)(A)(iii) that an award of expenses, including attorneys' fees, would be unjust. Accordingly, without any argument from Defendants, the Court cannot find that they have met their burden to avoid fees under this inquiry. Thus, the Court instead considers only whether Defendants' resistance to Plaintiffs' written

discovery requests and Plaintiffs' request for a physical inspection was substantially justified under Rule 37(a)(5)(A)(ii).

### A. Substantial Justification

#### 1. Defendants' Resistance to Plaintiffs' Written Discovery Requests

In their Motion for Protective Order, Defendants objected to Plaintiffs' written discovery requests for two primary reasons. First, Defendants maintained that responding to these requests posed an undue burden; and second, Defendants contended that the written discovery violated the Court's consolidation order which specified that discovery on issues unrelated to exhaustion would be determined by separate order. Defendants now rely on these same arguments to contend that they were substantially justified in opposing Plaintiffs' written discovery requests. But, as explained below, the Court finds these arguments unpersuasive here just as the Court found these arguments unpersuasive in its February 2023 Opinion and Order.

#### a. Defendants' Undue Burden Arguments

As stated, Defendants first rely on the burden imposed by Plaintiffs' requests to argue that their opposition was substantially justified. To address Defendants' argument here, the Court will recount portions of Defendants' discovery motions and the Court's February 2023 Opinion & Order rejecting this argument.

In their filings resisting Plaintiffs' written discovery requests, Defendants explained that certain requests were burdensome because they would require Defendants to review "documents in the IDOC packets of other offenders . . . and would require the undersigned counsel to effectively perform a privilege and relevance

review for documents for nearly thirty of these plaintiffs, even for those plaintiffs in whose cases he has not appeared as counsel." [DE 66 at 3]. But in its February 2023 Opinion & Order, the Court found this unpersuasive for two reasons. First, the Court observed that, because Defendants only raised this argument for the first time in their reply brief, the argument would generally be deemed waived. [*See* DE 78 at 16, citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019) and *Lesea, Inc. v. Lesea Broad. Corp.*, No. 3:18CV914-PPS/MGG, 2021 WL 3022918, at *3 (N.D. Ind. July 16, 2021)]. Second, even considering the argument, the Court found that it was conclusory and failed to provide enough information to evaluate the burden imposed by a review of inmate packets. [*See id.*, citing *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, No. 1:13-CV-00357, 2014 WL 4979394 (N.D. Ind. Oct. 6, 2014) and *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill. 2006)].

Still, Defendants contend that their concern about the burden imposed by the requests was substantially justified, explaining that "[n]ew evidence uncovered since the Court's discovery order shows how burdensome Plaintiffs' requests are." [DE 87 at 6]. Defendants proceed to explain that shortly after the Court issued its discovery order, their counsel worked with Miami to identify the number of inmates housed in the RHU during the relevant timeframe. Defendants report that there have been 350 inmates housed in the RHU during the relevant timeframe. Thus, to respond to Plaintiffs' requests, Defendants explain that they must identify and gather records for each of these 350 inmates, review the documents, and redact them. [DE 87 at 6].

The Court cannot find this argument establishes substantial justification. Responding to Plaintiffs' requests may indeed require Defendants' counsel to engage in extensive document review, redaction, and production. But, as Plaintiffs contend, Defendants never explain why they did not—or could not—present this information at the time they filed their motion for protective order. Though Defendants characterize this as "newly uncovered evidence," nothing suggests that this information could not have been ascertained before Defendants filed their motion. Defendants' belated presentation of this evidence implies that Defendants made their initial arguments of undue burden without first investigating what responding to Plaintiffs' discovery requests would entail. It is neither here nor there that their conclusory, undeveloped statement may now be accurate—the Court cannot find their untimely attempt to demonstrate undue burden justifies their opposition. *See Zimmer, Inc.*, 2019 WL 2635944, at *2 (finding no substantial justification when a party should have been aware of the requested discovery and had relied on unsupported arguments); *see also Knauf Insulation, LLC v. Johns Manville Corp.*, No. 115CV00111WTLMJD, 2019 WL 10947458, at *2 (S.D. Ind. Feb. 27, 2019) ("Knauf's untimely efforts to support its arguments of undue burden and limited relevance do not justify its resistance. Knauf failed to convince the Court and failed to support its argument in its response to the motion to compel – including more information after failing to originally do so is too little, too late.") Without more, the Court cannot find that this makes Defendants' resistance substantially justified.

### b.    Impermissible Merits Discovery

Next, Defendants contend that their opposition was substantially justified because they relied on the Court's Consolidation Order prohibiting merits discovery relating to the other 26 plaintiffs until exhaustion was resolved in their cases. Defendants objected to Plaintiffs' written discovery requests because Defendants believed them to be "an end run on the Court's prohibitions on merits discovery in the non-exhaustion cases." [DE 87 at 5]. Defendants' characterization appeared to stem from their belief that, to prevail on their claims, Plaintiffs only needed to "demonstrate that [their] cell had the alleged conditions at the time [they were] in it, and the conditions were unconstitutional." [DE 61 at 8]. Thus, because certain discovery requests sought information beyond these Plaintiffs' specific cells and beyond the specific timeframe these Plaintiffs were placed in those cells, Defendants believed that the above-captioned Plaintiffs must be seeking merits discovery for the other plaintiffs.

The Court rejected these arguments in its opinion and order, first observing that Defendants' characterization of Plaintiffs' claims "fail[ed] to address the subjective component of Eighth Amendment claims." [DE 78 at 12-13]. The Court also found that Defendants' arguments cut against their own discovery responses, which "plainly raise[d] issues beyond the individual Plaintiffs' cells and beyond the discrete, individual timeframes Plaintiffs were housed in those cells." [DE 78 at 13]. Still, Defendants maintain their opposition to Plaintiffs' discovery was substantially justified. Defendants explain that it "was a nuanced position that . . . merits discovery for a particular plaintiff should be allowed if, and when, the Court denied an exhaustion

summary judgment motion" and "[r]elaying [sic] on court orders is always a reasonable position for a party to take." [DE 87 at 5].

The Court may have found Defendants' position to be substantially justified if the parties' disagreement pertained only to the juxtaposition of the subjective component of the Eighth Amendment with the Court's Consolidation order. But the dispute also stemmed from the fact that Defendants' discovery response raised issues beyond the Plaintiffs' cells—an issue which the Defendants ignore here. Thus, Defendants appear to do no more than rehash their previously rejected arguments. The Court cannot find that this demonstrates substantial justification. *See Zimmer, Inc.*, 2019 WL 2635944, at *2 (finding no substantial justification where party's argument was "little more than a repackaged version of [party's] proportionality argument" made in prior discovery motion); *see also Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, No. 119CV00165DRLSLC, 2021 WL 2910814, at *12 (N.D. Ind. July 12, 2021), *aff'd*, 340 F.R.D. 570 (N.D. Ind. 2021) (finding no substantial justification where opposition arguments were "undercut" by arguments made in discovery process).

Defendants also point to the Court's order limiting the timeframe of Plaintiffs' requests to show substantial justification. Defendants contend that the Court's order "limiting the relevant period of the discovery requests . . . effectively granted the Defendants the relief they sought as far as a limited scope of time of the requests . . . ." [DE 87 at 3]. But this statement does not accurately reflect Defendants' objections to the requests. Defendants did not simply object to the requests by seeking a more limited timeframe—Defendants instead contended that "[t]he only cell[s] at issue in this case

[were Plaintiffs' cells]. *The only relevant time period is* [*the time Plaintiffs were in the cells*]."
[DE 87 at 3, emphasis in original]. Thus, the Court cannot find that its order limiting the
timeframe of Plaintiffs' request without prejudice—which the Court did on its own in
accordance with Fed. R. Civ. P. 26(b)(2)—demonstrates that Defendants' broader
resistance was substantially justified.

2.    **Request for Physical Inspection**

The Court now turns to Defendants' objections to Plaintiffs' request for a
physical inspection of the Miami RHU. Defendants maintain that their opposition to
Plaintiffs' requests for a physical inspection was substantially justified for three reasons.
First, Defendants maintain that such inspections are generally considered to be
burdensome, and so Plaintiffs' requests unduly burdened Miami; second, Defendants
contend the Court's discovery order granting Plaintiff's request was "favorable to
Defendants because it addresses their concerns regarding security and resources at the
facility[;]" and third, Defendants argue that it was reasonable for them to believe that an
inspection would be low in probative value because the cells were no longer in the same
condition, meaning that a site inspection would only be able to approximate the
conditions experienced by Plaintiffs. [DE 87 at 3].

The Court begins with Defendants' first argument contending that Plaintiffs'
requested site inspection was burdensome and dangerous for Miami, making their
opposition to the request reasonable. In support, Defendants direct the Court to
*Cameron v. Menard*, No. 5:18-CV-204-GWC-KJD, 2021 WL 2805603 (D. Vt. July 6, 2021).
[*See* DE 87 at 8-9]. It is true that the Court in *Cameron* found that the plaintiff's

"requested site inspection creates burdens and dangers to the DOC[,]" but the court made this observation as part of its analysis balancing the value of the requested inspection with its burden, finding there that the dangers and burdens outweighed the value of the inspection to the plaintiff. *Id.* at *10. In contrast, here, while the Court acknowledged that a physical inspection created burdens and concerns for Miami, the Court found that those concerns were outweighed by the probative value of the inspection. Defendants' argument now appears to ask this Court to find their position substantially justified by only considering only the first half of the analysis.

Defendants also contend that the Court's order, which directed the parties to "confer on the appropriate date, time, conduct, and rules for a physical inspection," effectively adopted its concerns and demonstrates the reasonableness of its concerns. [DE 78 at 21]. But, as Plaintiffs point out, Defendants did not simply resist the timing or circumstances of a site inspection—Defendants refused to allow for a site inspection under any circumstances or timing. Defendants did so despite Plaintiffs' acknowledgment of valid safety and security concerns and Plaintiffs' willingness and assurances to "abide by any safety and security related restrictions designated by the discovery dispute." [DE 61-3 at 5]. Safety and security concerns are valid—as the Court recognized in its February 2023 order directing the parties to meet and confer on these issues—but addressing these concerns did not require an outright refusal. Instead, the Court found that these concerns are best addressed by circumstantial limitations, rather than the outright prohibition sought by Defendants. [DE 78 at 21]. The Court cannot

find that an order requiring conferral and accommodations shows that Defendants'
outright refusal was substantially justified.

Finally, Defendants explain that they resisted the request for a physical
inspection of the RHU because the cells had been repaired, and a physical inspection
would only be able to approximate those conditions. This argument, on its own, may
have been considered reasonable, and therefore may have made Defendants' resistance
to the requests substantially justified. But the Court cannot ignore that Defendants
made this argument as part of a broader challenge to the value of the requested site
inspection.

In their motion for protective order, Defendants maintained that "dark is dark" –
explaining that, if Plaintiffs and their expert have "studied the effects of a person being
kept in the dark in one room, then he has expert knowledge of the effects of being kept
in the dark in another room. He does not need to see a lighted cell to opine as to the
effects of being kept in the dark." [DE 61 at 10]. The Court rejected this argument
because Defendants' own discovery responses demonstrated that, in fact, "dark" was
not simply "dark"—as Defendants' response to Plaintiffs' Interrogatory No. 6 plainly
stated that Mr. Blanchard's cell had some gradation of light from another source. [DE 78
at 10]. The Court cannot find that Defendants' selective "repackaging" of their initial
argument in opposition makes their resistance substantially justified. *Zimmer, Inc.*, 2019
WL 2635944, at *2.

In sum, the Court cannot find that any of Defendants' arguments meet their
burden to avoid the assessment of fees. Accordingly, the Court will award Plaintiffs

their reasonable expenses incurred in litigating the Defendants' Motion for Protective

Order and Plaintiffs' related Motion to Compel.

### 3.    Responsibility for Payment

Before the Court considers the reasonableness of the requested fees, the Court

must determine who bears responsibility for payment. The parties' filings make it plain

that Defendants themselves had no role in the dispute. "When a party's attorney is at

fault for a discovery violation, the appropriate remedy is to shift costs to the party's

counsel." *Thompson v. Fajerstein,* No. 08 CV 3240, 2010 WL 4628515, at *1 (N.D. Ill. Nov.

8, 2010) (internal quotation and citation omitted). Therefore, as requested by Plaintiffs,

Defendants' counsel is responsible for payment of Plaintiffs' fees incurred here.

### B.    Reasonableness of Fees

Finding an award of fees warranted, the Court must now determine whether the

fees requested are reasonable. "Reasonable attorney fees under Rule 37 are calculated

using the 'lodestar' method, which is a reasonable hourly rate multiplied by the hours

reasonably expended." *L.H.H. ex rel. Hernandez v. Horton,* No. 2:13-CV-452-PRC, 2015

WL 1057466, at *1 (N.D. Ind. Mar. 10, 2015). The Court must first determine whether the

hourly rate requested is reasonable. Next, "[t]he Court must also determine whether an

attorney's requested award is for hours reasonably spent." *Zimmer, Inc. v. Beamalloy*

*Reconstructive Med. Prods., LLC,* No. 1:16-cv-00355-HAB-SLC, 2019 WL 2635944, at *4

(N.D. Ind. June 27, 2019).

Though Defendants bore the burden to avoid an award of fees, the burden now

shifts to Plaintiffs, as "the party seeking an award of attorneys' fees bears the burden of

proving the reasonableness of the hours worked and the hourly rates claimed." *Bratton v. Thomas L. Firm, PC*, 943 F. Supp. 2d 897, 902 (N.D. Ind. 2013). The Court has "wide discretion in determining the appropriate amount of attorneys' fees and costs...." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

### 1. Hourly Rate

Plaintiffs request an award at their counsels' rates of $600/an hour (Attorney Ken Falk) and $400/an hour (Attorney Stevie Pactor), respectively. "A reasonable rate is one 'derived from the market rate for the services rendered.'" *L.H.H. ex rel. Hernandez*, 2015 WL 1057466, at *1 (quoting *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). Accordingly, "courts first look to the rate actually charged; this is the rate to which the prevailing party is presumptively entitled, regardless of whether the attorney charges a rate above or below the market average." *Watkins v. Trans Union, LLC, No. 214CV00135WTLMJD, 2019 WL 336674*, at *3 (S.D. Ind. Jan. 28, 2019), *report and recommendation adopted*, No. 2:14-CV-135-WTL-MJD, 2019 WL 653095 (S.D. Ind. Feb. 15, 2019) (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). But here, Plaintiffs' attorneys report that they do not charge their clients attorney's fees. Plaintiffs' attorneys instead use the instant hourly rates in cases involving a fee-shifting statute. [DE 81-1 at 2, ¶11; DE 81-2 at 2, ¶11]. Still, Plaintiffs' attorneys can demonstrate the reasonableness of their hourly rate by referring the Court "to fees [they have] been awarded in similar cases." *Id.* (citing *Spegon*, 175 F.3d at 550). If no such cases are available to support a requested hourly rate, the Court can also look to the "prevailing

market rates in the relevant community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984)).

The Court starts with Attorney Falk's hourly rate of $600/an hour. In support of Mr. Falk's requested rate, Plaintiffs refer the Court to two cases awarding Mr. Falk fees: *Planned Parenthood of Indiana and Kentucky v. Commissioner, Indiana State Dep't of Health*, No. 1:16-cv-763-TWP-DML (S.D. Ind. Feb. 25, 2020), where Mr. Falk was awarded fees at $500/an hour; and *Wirtz v. City of S. Bend*, 2012 WL 589454, *2 (N.D. Ind. 2012), where Mr. Falk was awarded fees at $400/an hour.

Defendants do not appear to dispute that Mr. Falk's awarded rate in the *Planned Parenthood* case, $500/an hour, was reasonable. But Defendants contend that Mr. Falk's increase to $600/an hour is unreasonable given that litigation "slowed down" during the COVID-19 pandemic and given the "simple nature of the dispute" here. Thus, Defendants maintain that the rate awarded should not exceed the $500/an hour awarded by the Court in 2020 in the *Planned Parenthood* case, and further maintain that the $400/an hour rate awarded in 2012 by the Court in *Wirtz* is more appropriate given the simplicity of their dispute here. [DE 87 at 10]. On reply, Plaintiffs make two arguments to support that Mr. Falk's rate of $600/an hour is reasonable here: first, Plaintiffs refer the Court to evidence from the *Planned Parenthood* case suggesting that Mr. Falk's $500/an hour rate was $150 below the prevailing market value at that time. [DE 90 at 9]. Plaintiffs also reference the CPI Inflation Calculator, which reports a 19% inflationary impact between the date Mr. Falk billed time in the *Planned Parenthood* case and the time expended here. [*Id.* at 8, citing *Spinkle v. Colvin*, 777 F.3d 421 (7th Cir. 2015)

(discussing award of inflation-adjust rates)]. Mr. Falk maintains that his increase from $500/an hour to $600/an hour is nearly identical to this inflationary increase.

The $500/an hour award in *Planned Parenthood*, together with Plaintiffs' reference to prior evidence suggesting that this rate was below market value and Plaintiffs' explanation about the adjustment for inflationary impact, meets Plaintiffs' burden to show that Mr. Falk's $600 hourly rate is reasonable. Defendants fail to explain how "slowed" litigation or their perception of the instant discovery dispute as "simple" justifies a lower rate or shows that Plaintiffs have not met their burden here.

The Court next considers Attorney Pactor's hourly rate of $400/an hour. In support of the requested rate, Plaintiffs explain that Ms. Pactor has been an attorney since 2014. Plaintiffs add that, before Ms. Pactor joined the ACLU in 2019, she worked as a judicial law clerk and litigation associate. [DE 82 at 14]. Plaintiffs direct this Court to *Maloy v. Stucky, Lauer & Young, LLP*, 2018 WL 6600082 (N.D. Ind. Dec. 14, 2018), where, in 2018, another court in this district approved an hourly rate of $318/an hour for a private attorney with seven years of experience.

In response, Defendants contend that this falls short of Plaintiffs' burden here for several reasons. First, Defendants note that Plaintiffs failed to cite any case where Ms. Pactor was awarded fees. Defendants also contend that Plaintiffs have provided no explanation why Attorney Pactor's rate should be above the $318/an hour found reasonable in *Maloy*. Finally, Defendants also assert, without further explanation or citation to authority, that $250/an hour is more appropriate because of the "simple nature" of the parties' dispute.

But, on reply, Plaintiffs contend that the difference between Ms. Pactor's rate and the rate approved in *Maloy* is apparent on its face: *Maloy* involved a less experienced attorney and was entered in 2018. Moreover, Plaintiffs refer the Court to the rates approved by another court in this district in *Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, No. 119CV00165DRLSLC, 2022 WL 950604, at *6 (N.D. Ind. Mar. 30, 2022), where the court approved rates ranging from $390/an hour to $570/an hour.

Plaintiffs have provided sufficient evidence to support Attorney Pactor's rate here. First, Defendants appear to concede that the rate approved in *Maloy* would be reasonable for Ms. Pactor. Accordingly, the rate of $318/an hour, from 2018, is considered the baseline. This baseline rate, compared to the lesser experience of the attorney in *Maloy*, and taken together with the inflationary impact information presented by Plaintiffs to support Attorney Falk's rate, provides sufficient evidence for Ms. Pactor's rate here.

### 2. Time Expended

The Court next considers whether Plaintiffs' counsel requests an award for hours reasonably spent. Plaintiffs have included the entries below regarding the time their counsel spent drafting the instant motions, responses, and replies:

| Date | Activity | Atty | KJF Hours | SJP Hours |
|---|---|---|---|---|
| 3/13/2022 | Draft response to protective order motion | Pactor, Stevie | | 4.33 |
| 3/15/2022 | Draft response to protective order motion | Pactor, Stevie | | 6.67 |
| 3/15/2022 | Review PO response | Falk, Ken | 0.89 | |
| 3/16/2022 | Draft response to protective order motion | Pactor, Stevie | | 2.58 |
| 3/16/2022 | Review pro ord response | Falk, Ken | 0.14 | |
| 3/17/2022 | Draft response to protective order motion | Pactor, Stevie | | 2.08 |
| 3/17/2022 | Review response pro ord | Falk, Ken | 0.56 | |
| 4/20/2022 | Supp for Protective Order | Falk, Ken | 0.40 | |
| 2/13/2023 | Ct ruling on discovery | Falk, Ken | 0.30 | |
| 2/17/2023 | Fees re: protective order | Pactor, Stevie | | 4.20 |
| 2/20/2023 | Draft fee petition re: prot order | Pactor, Stevie | | 1.10 |
| 2/20/2023 | Review - fee motion | Falk, Ken | 0.20 | |
| 2/21/2023 | Prot order fee petition drafting | Pactor, Stevie | | 1.50 |
| 2/21/2023 | Review SJP fee memo | Falk, Ken | 0.50 | |
| 4/25/2023 | Fee motion reply | Pactor, Stevie | | 3.20 |
| 4/26/2023 | Review - fee reply | Falk, Ken | 1.00 | |
| 4/26/2023 | Fee motion reply | Pactor, Stevie | | 4.3 |
| 4/27/2023 | Draft fee reply | Pactor, Stevie | | 2.2 |
| | | Falk, Ken | | |
| | Hours | | 3.99 | 32.16 |
| | Rates | | $600 | $400 |
| | Sub-totals | | $2,394.00 | $12,864.00 |

| Date | Activity | Professional | KJF Hours | SJP Hours |
|---|---|---|---|---|
| 08-21-2022 | Motion to compel | Falk, Ken | 3.30 | |
| 08-22-2022 | Draft mot to compel | Pactor, Stevie | | 0.4 |
| 08-22-2022 | Compel and memo | Falk, Ken | 0.90 | |
| 09-10-2022 | Reply motion to compel | Falk, Ken | 1.10 | |
| 09-12-2022 | Compel reply | Falk, Ken | 0.20 | |
| 09-12-2022 | Review compel reply | Pactor, Stevie | | 0.40 |
| | Hours | | 5.50 | 0.80 |
| | Rate | | $600 | $400 |
| | Sub-Totals | | $3,300.00 | $320.00 |

[DE 90-2 at 3-4].

"To determine the reasonableness of the hours expended, courts consider several factors, including the time and labor required, the novelty and difficulty of the issue, the legal skill required, the reputation of the attorneys, the time burdens imposed by the client or the circumstances, and awards in similar cases." *Lamarr v. Montgomery Lynch & Assocs., Inc.*, No. 1:18-CV-185-TLS, 2019 WL 912171, at *2 (N.D. Ind. Feb. 25, 2019). Moreover, "the court should exclude hours that are 'excessive, redundant or otherwise

unnecessary.'" *Small v. Richard Wolf Med. Instruments, Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)).

In support of the hours expended, Plaintiffs explain that briefing the instant discovery dispute and fee award required their counsel to research, draft, and submit 44 pages of briefs. Based on the hours submitted in their fee petition, Plaintiffs explain that this amounts to only 42 minutes per page. [DE 90 at 14]. Still, Defendants contend that the hours spent were "excessive" for a simple discovery dispute and that the entries are duplicative, insufficiently detailed, or redundant. [DE 87 at 11]. For instance, Defendants contend that Attorney Pactor's multiple entries stating, "Draft response to protective order motion," are vague and duplicative because they do not indicate what differentiates these entries. Defendants maintain that, to be approved, the entries should indicate which discrete portions of the response were drafted, citing generally to the Court's decision in *Axis Ins. Co.*, 2022 WL 950604, at *6 in support of this contention.

The Court cannot find that Defendants' arguments show that Plaintiffs have failed to meet their burden here. First, Defendants' conclusory argument that this dispute is "simple" is undercut by the breadth of their own filings as well as their contention that the discovery requests are burdensome. Moreover, addressing the parties' dispute here required this Court to issue a 22-page Opinion & Order in February 2023 and the instant opinion of almost similar length. The Court cannot find that Defendants' unilateral characterization that this dispute was simple warrants a lesser award.

Defendants' arguments that Plaintiffs' entries require more detail to be awarded likewise fail here. "Counsel are not required to record in great detail how each minute of their time was expended. But at least counsel should identify the general subject matter of their time expenditures." *Greenfield Mills, Inc. v. Carter*, 569 F. Supp.2d 737, 745 (N.D. Ind. 2008) (internal quotations omitted). Moreover, as contended by Plaintiffs, Defendants' reference to the Court's opinion in *Axis* was indeed "grossly misstate[d]." [DE 90 at 11]. There, the Court addressed the duplicative nature of entries billed by multiple attorneys regarding the same internal communication. The Court did not address entries like those presented by Plaintiffs here, nor did the Court find that entries must specify which discrete portions of a brief were completed to be awarded.

Accordingly, the Court finds that Plaintiffs have met their burden of showing that the 42.45 hours recorded were reasonably spent and thus should be awarded.

### III.    Conclusion

For the reasons stated above, Plaintiffs' motion is **GRANTED** [DE 81 in 3:21-cv-160-CCB-SJF and DE 18 in 3:22-cv-286-CCB-SJF]. Defendants' counsel is **ORDERED** to pay Plaintiffs $18,878 within 60 days from the date of this order.

**SO ORDERED** this 24th day of September 2024.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge